Although it is said that policies of insurance are to be construed liberally for the insured, (1 Story's R. 360; 2Sumner's R. 380; 5 Cranch, 335,) yet where the words are not ambiguous, and the expression of the intent of the parties is full, I know of no reason why they should be excepted from the general rules of law applicable to the construction of all contracts. In deciding, therefore, whether the property in question is covered by the insurance, the language of the transfer is to be construed in its usual and popular sense, there being nothing to take it out of that general rule. The question to be decided is not, whether the property in question is covered by the first or the second policy. If it be excluded from the first, *Page 542 
it does not necessarily follow that it is included in the second. But the question is, whether it is within the first policy, on which this action is brought; that is to say, whether the 462 sticks of timber burned were a part of the barque then building for Howes, Godfrey Co.
The sticks were cut and ready to be framed, but they had not been framed. They did not constitute frames. They not only had never been annexed to the barque, but they were not ready to become a part of it, for they could not be annexed to the barque till they had been framed. They were sticks of timber cut to be used in the construction of the barque, but had never been so used in fact. These sticks were scattered about the ship yard, and a part of them lay on the opposite side of the ship in which the fire broke out. It is true, the proof shows that these sticks, being cut for the frame of the barque, were useless for any other purpose. But I do not see how that fact tends to show that they were part of the barque. It only shows that in getting them ready to make them a part of the barque, they had been rendered unfit for any other use. That may be a misfortune to the owners, if they are not covered by the subsequent insurance on "lumber and building materials," but it is not an argument tending to show that they were part of the barque. If it were necessary, however, to the decision of this case to decide which policy covered the sticks of timber in question, I should have no hesitation in saying that they continued to be "building materials" at the time they were destroyed. The insured party seems to have taken a similar view of this question, and to have selected appropriate words, when, in his preliminary proofs, he called the property "timber and lumber," and described it as "462 pieces of timber, ready to be put into the frame of the barque."
The property insured was a barque on the stocks building, that is to say, being built for Howes, Godfrey Co. Now, it was only the barque on the stocks which was insured. The sticks scattered around the yard, though they had been ready to be annexed, were not on the stocks. I suppose the term "on *Page 543 
the stocks" is descriptive of the whole property insured; and that it would do violence to the language of the contract to make it extend to property, only part of which was on the stocks. The description of the barque as being near the ship, and the privilege being given to build another vessel alongside of it, shows that it referred to what was on the stocks alone. Such language was not applicable to property scattered all over the yard.
Any other rule of construction than that I have adopted, would lead to great uncertainty and confusion. If the sticks became part of the vessel, before being actually incorporated in it by annexation, then when did they become so? At what point did they cease to be "building materials" and become "a barque?" When the timber was cut in the forest? It may have been so selected and cut as to be fit for no other vessel. Or was it when the sticks were brought to the yard? or when the work was commenced on them to fit them for the barque? or when they were ready to be framed? or when they were framed and ready to be annexed? If all this would make the sticks a barque, which I deny, it is one step more than had been taken in this case, for the sticks had not been framed. It is apparent that as soon as we leave the safe rule, which requires actual annexation, there is no point of preparation at which the thing changes its entire character. If it were the building of a house instead of a ship, none of the materials furnished would lose their character as personal property and become part of the realty, until actually annexed. (Ferard on Fix. 9, note a.) "Ubi eadem ratio, ibi eademjus."
If we are at liberty to look beyond the naked words of this contract, it is plain that great injustice would be done by adopting the construction claimed by the plaintiff. The defendant's counsel offered to show that the premium would have been greater, if the scattered sticks in question had been included in the policy. And that the risk is greater for such property, can hardly be doubted. In this case, the fact cannot be overlooked, that if the sticks had become part of the barque on the stocks, no loss *Page 544 
would have been sustained; for the barque on the stocks was not injured.
The question presented is not at all like the cases cited, where rigging and provisions covered by a policy on a ship are protected, while severed from the ship and on shore in their usual and proper places. (1 Burr. 341; 4 Tenn. R. 210.) I concede that if the sticks had once been annexed, and had thus been made part of the vessel, they would not lose their character while severed for a temporary purpose. They would still, in that case, be part of the barque. Whether in such case they would have been excluded on the ground that they were not "on the stocks," is another question, and one not necessary to be determined in this suit.
I cannot distinguish this case from that of Mason Leap v.Franklin Ins. Co., (12 Gill John. 469;) and I think the judgment of the superior court should be reversed and a new trial awarded.
Judgment accordingly.